Sean M. Miller
BRASHEARS MILLER, PLLC
825 Usener Street, #710
Houston, Texas 77009
Texas Bar No. 24101132
Sean@BrashearsMiller.com
Tel.: (281) 796-5513

ATTORNEY FOR DEFENDANT
PATTERSON REMODELING, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Morgan Howarth,<br><br>  Plaintiff,<br><br>v.<br><br>Ryan Patterson, Patterson Homes, LLC, and Patterson Remodeling, LLC,<br><br>  Defendant(s). | CV-19-0726-PHX-ESW<br><br>**MOTION TO SET ASIDE AN ENTRY OF DEFAULT UNDER FRCP 55(c)** |

TO THE HONORABLE JUDGE OF SAID COURT:

  Defendant Patterson Remodeling, LLC (hereinafter, "Defendant" or "Patterson Remodeling") respectfully moves for relief from the entry of order of Default and to set aside under FRCP 55(c).

**I. FACTUAL BACKGROUND**

  Defendant is an LLC organized under the laws of the State of Arizona.[1] While Mr. Patterson is a manager and member of Patterson Remodeling LLC, he retired from all Patterson

---

[1] *Ex. 1.*

Remodeling operations in 2013.[2] After retiring from the business, Mr. Patterson moved over three hours away from Phoenix, to Show Low, Arizona to enjoy his retirement in the mountains.[3]

However, 2019 was a busy year for Mr. Patterson. In July of that year, Mr. Patterson and his wife were in the process of adopting a fifteen-year-old special needs boy (the "Patterson child" or the "child").[4] The Patterson child had been fostered by Mr. and Mrs. Patterson (jointly, the "Pattersons") for the previous eighteen months after the child, who had previously been living in an abusive, drug-filled home, found his way to his new family through their church.[5] Although it had been fifteen years since the Pattersons had children in their home, they felt a great affection for the child and felt that it was their duty to take him in and give him a more stable homelife.[6]

In addition to adopting the Patterson child, the Pattersons wanted to make sure that the special-needs boy, who was raised in a cramped mobile home without any space of his own, had a permanent room.[7] This would mean renovating their current home so that they could sell it and move into a more child-friendly home in nearby Pinetop, Arizona.[8] This involved months of contractors and subcontractors coming in and out of the Patterson home performing all manner of construction work.[9]

Additionally, the Pattersons were deeply involved with investigating surrounding neighborhoods to find a larger home in a child-friendly area.[10] When the Pattersons found their new home in Pinetop, they decided to keep the Patterson child enrolled in his current school

---

[2] *Ex. 1.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*

where he was receiving a high degree of care and support from teachers and faculty, as well as developing a close group of friends in order to help him maintain a measure of normalcy for the first time in his life.[11] Driving their son from the new home to his old school requires two one-hour-long roundtrip commutes five days a week.[12]

While Mr. Patterson was served with Plaintiff's First Amended Complaint, which raises numerous baseless and unfounded accusations, on October 15, 2019, he was in the midst of a complete upheaval in his life–a new son, a new home, and a major move–all at the age of 61.[13] Further, Mr. Patterson, who had been retired from the business **for over six years** was well out of his depths in terms of the nature of this lawsuit and the claims asserted.[14] Therefore, Mr. Patterson, who, at the time, resided over three hours outside of Phoenix, in the mountains of Show Low, had to find an attorney with an understanding of the complex nature of these claims, which was no small undertaking for a man long retired.[15]

Patterson Remodeling has retained counsel and fully intends to defend itself against Plaintiff's ridiculous accusations.[16] Defendant's counsel has now been admitted to this Court *pro hac vice*, and Defendant can and will demonstrate its meritorious defenses and/or counterclaims.[17]

## II. ARGUMENTS & AUTHORITIES

The law controlling whether a court may set aside default under FRCP 55(c) is well-settled in the Ninth Circuit. In determining whether good cause has been shown, a district court must consider (1) whether the default resulted from culpable conduct on the part of the

---

[11] *Ex.1*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

defendant; (2) whether the defendant has a meritorious defense; and (3) whether the plaintiff would be prejudiced by setting aside the default. *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). "To be prejudicial, the setting aside of a [default] must result in greater harm than simply delaying resolution of the case." Id. at 701. Further, "[t]his standard . . . is disjunctive, such that a finding that anyone of these factors is true is sufficient reason for the district court to refuse to set aside the default." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

Under Ninth Circuit case law, a defendant's conduct may be deemed "culpable" only if he has "received actual or constructive notice of the filing of the action and intentionally failed to answer." *Mesle*, 615 F.3d at 1092 (emphasis in original). As the Ninth Circuit explained in *Mesle*, "a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *Id*. Thus, a failure to answer cannot defeat a showing of good cause under Rule 55(c) unless there is evidence that the defendant acted deviously, deliberately, willfully or in bad faith. *Id*.

Considering the first factor identified above, Defendant's failure resulted, not from bad faith or to manipulate the legal process, but because Plaintiff chose to serve a long-retired manager-member, who was in the midst of a major life change that was occupying his complete field of vision. Because Plaintiff chose to serve Patterson Remodeling LLC through Mr. Patterson, who had been retired for over six years, had no experience with intellectual property litigation, and was in the process of settling in a newly-adopted special-needs child, and was

therefore unable to respond to Plaintiff until he was able to secure counsel, Paterson Remodeling easily satisfies the first factor of the *Mesle* test.

Secondly, the Defendant has meritorious defenses to Plaintiff's unfounded and baseless accusations. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense: 'the question whether the factual allegation [i]s true is not to be determined by the court when it decides the motion to set aside the default. Rather, that question 'would be the subject of the later litigation.'" *Mesle*, 615F.3d at1094 (alteration in original) (citation omitted) (quoting *TCI Grp.*, 244 F.3d at 700). This approach is consistent with the principle that "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *TCI Grp.*, 244 F.3d at 700. Throughout Plaintiff's incoherent and inarticulate First Amended Petition, Defendant fails to see that Plaintiff has stated a claim upon which relief may be granted. While Defendant maintains that other defenses and affirmative defenses exist, it would be improper for Defendant to plead defenses in a Motion To Set Aside An Entry of Default. However, because Defendant can meet the low burden, the second disjunctive *Mesle* factor is met.

Under the third factor, in determining whether the Plaintiff's case will be prejudiced, as noted above, "the setting aside of a [default] must result in greater harm than simply delaying resolution of the case." *TCI Grp.*, 244 F.3d at 696. "Rather, the standard is whether [the] plaintiff's ability to pursue his claim will be hindered." *Id.* Here, Plaintiff has offered no evidence that setting aside the entry of default will in any way prejudice their case. Even were Plaintiff to proffer evidence, such evidence must overcome the Ninth Circuit's standard that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Mesle*, 615 F.3d at 1091. Because setting aside the entry for

default against Defendant Patterson Remodeling will in no way prejudice Plaintiff's case, and will in actuality allow this case to be determined on the merits, as is the standard in this Circuit, Defendant easily satisfies the third *Mesle* factor.

Because the Ninth Circuit, under the *Mesle* test, merely requires a Defendant to satisfy a single, disjunctive factor, and because Defendant Patterson Remodeling actually meets all three, Defendant is entitled to a setting aside of the entry of default under FRCP 55(c).

### IV. CONCLUSION & PRAYER FOR RELIEF

WHEREFORE, Defendant Patterson Remodeling, LLC prays that this Court grants this Motion, vacates the Clerk's Entry of Default entered November 22, 2019 under FRCP 55(c), and declares it stricken and provides all other relief which is available to Defendant at both law and equity.

Dated this 13th day of January, 2020.

Respectfully submitted,

Brashears Miller, PLLC

*/s/ Sean M. Miller*
Sean M. Miller
Texas State Bar No. 24101132
Email: Sean@brashearsmiller.com
825 Usener Street, #710
Houston, Texas 77009
Phone: (281) 796-5513

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been served on all parties electronically via CM/ECF on January 13, 2020.

*/s/ Sean M. Miller*
Sean M. Miller